Matter of Crone v DiNapoli (2022 NY Slip Op 00481)





Matter of Crone v DiNapoli


2022 NY Slip Op 00481


Decided on January 27, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:January 27, 2022

530807
[*1]In the Matter of Jonathan Crone, Petitioner,
v
Thomas P. DiNapoli, as State Comptroller, Respondent.

Calendar Date:December 16, 2021

Before:Garry, P.J., Lynch, Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Paul N. Weber, Cornwall, for petitioner.
Letitia James, Attorney General, Albany (Sarah L. Rosenbluth of counsel), for respondent.



Lynch, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent denying petitioner's application for accidental disability retirement benefits.
Petitioner, a patrol sergeant for the City of Beacon Police Department, filed an application for accidental disability retirement benefits alleging that he was permanently disabled as a result of a traumatic brain injury with cognitive impairment, which he sustained on November 4, 2014 when his chair allegedly broke, causing him to fall backwards and strike the wall and desk with his head. The New York State and Local Police and Fire Retirement System denied petitioner's application upon the ground that the incident did not constitute an accident within the meaning of Retirement and Social Security Law § 363. Following a hearing and redetermination, the Hearing Officer denied petitioner's application. Respondent upheld the Hearing Officer's decision, prompting petitioner to commence this CPLR article 78 proceeding to challenge respondent's determination.
Petitioner's burden was to demonstrate that his disability arose out of an accident which, for purposes of the Retirement and Social Security Law, is defined as "a sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact" (Matter of Lichtenstein v Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art. II, 57 NY2d 1010, 1012 [1982] [internal quotation marks and citation omitted]; accord Matter of Kelly v DiNapoli, 30 NY3d 674, 681 [2018]). This is a "'commonsense definition'" (Matter of Kelly v DiNapoli, 30 NY3d at 681, quoting Matter of Lichtenstein v Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art. II, 57 NY2d at 1012). Under this standard, petitioner was required to demonstrate that his injuries were caused by a precipitating event that was sudden, unexpected and not a risk inherent in his ordinary job duties (see Matter of Kelly v DiNapoli, 30 NY3d at 678; Matter of Stancarone v DiNapoli, 161 AD3d 144, 149 [2018]).
Petitioner, who was on duty in the communications office, testified that when he sat in a desk chair and leaned back, the chair continued backwards and flipped over, resulting in his injuries. More specifically, he explained that he "leaned back and the back of the chair continued to go and then it just went over." Before leaving work, petitioner inspected the chair and "noticed [a] crack in the bottom." An unidentified person placed the chair in a dumpster but it was recovered within a few days by a lieutenant in the police department, who secured the chair in an empty office and observed that the chair was broken underneath the seat. Within a month of the incident, petitioner took photos of the chair, which were received in evidence. Petitioner confirmed that the photos depicted the subject chair because "[t]he break in the chair is the same as [*2]when it occurred that night when I looked at it, or the next morning when I flipped it over." The photos depict a break or split in the metal framing of the chair. Petitioner did not know if the chair was defective before he sat in it and did not hear any crack when he leaned back and fell over. As the Hearing Officer noted, petitioner explained that "to [his] knowledge" the chair was "in proper working order" before he sat down. Certainly, petitioner was under no obligation to inspect the underside of the chair before sitting down.
In our view, the incident as described constitutes an accident. Contrary to the findings of the Hearing Officer, whether the chair was broken prior to or during the fall is of no moment, as either way petitioner was unaware of any defect. In either situation, the collapse of a chair back would be a sudden, unexpected outcome for anyone who simply sits and leans back. The Hearing Officer's speculative observation that the chair might have been broken when it was thrown into the dumpster disregards petitioner's testimony that he observed the break in the chair metal the day of the incident. The Hearing Officer's further assumption that members of the police department may have continued to use the chair after the fall and before the photographs were taken is also unduly speculative and disregards the lieutenant's testimony that he observed that the chair was broken and secured it in an empty office. The defect in the chair frame explains the failure of the chair, which had an adjustable back designed to be leaned upon. And that is all petitioner did, he leaned back in the chair, which failed, causing his injury. Falling from a desk chair does not constitute a risk inherent in petitioner's ordinary job duties. To validate that point, we must simply look to Matter of McCambridge v McGuire (62 NY2d 563 [1984]), where the Court of Appeals held that the petitioners each sustained an accidental injury in the following circumstances: (1) where a police officer lost his balance and fell while getting up from a desk as another officer on whom he was leaning suddenly moved away, and (2) where a police officer slipped and fell on wet pavement getting into a patrol car on a rainy day (id. at 567-568; see Matter of Starnella v Bratton, 92 NY2d 836, 839 [1998]). As such, we conclude that respondent's determination is not supported by substantial evidence (see Matter of Meyer v New York State Comptroller, 92 AD3d 1122, 1123 [2012]; compare Matter of Clarke v Murray, 85 AD3d 1536, 1537 [2011] [no evidence offered that chair was defective]; Matter of Brennan v New York State & Local Empls. Retirement Sys., 50 AD3d 1374, 1376 [2008] [same]).
Garry, P.J., Pritzker and Reynolds Fitzgerald, JJ., concur.
Aarons, J. (dissenting).
Because substantial evidence supports respondent's determination that the incident at issue was not an accident within the meaning of the Retirement and Social Security Law, I would confirm. Accordingly[*3], I respectfully dissent.
Petitioner sought accidental disability retirement benefits due to injuries sustained after he leaned back on a chair and fell. The New York State and Local Police and Fire Retirement System denied petitioner's application upon the ground that the incident did not constitute an accident within the meaning of Retirement and Social Security Law § 363. A hearing ensued, after which petitioner's application was denied. The Hearing Officer concluded that petitioner failed to prove that him falling from the chair constituted an accident. Respondent adopted the Hearing Officer's determination.
As the majority notes, petitioner bore the burden of proving that his disability stemmed from an accident within the meaning of the Retirement and Social Security Law (see Matter of Bohack v DiNapoli, 197 AD3d 1384, 1384 [2021]; Matter of O'Brien v DiNapoli, 196 AD3d 960, 961 [2021]; Matter of Schemmer v DiNapoli, 196 AD3d 958, 959 [2021]; Matter of Stancarone v DiNapoli, 161 AD3d 144, 146 [2018]). An accident is "a sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact" (Matter of Kelly v DiNapoli, 30 NY3d 674, 681 [2018] [internal quotation marks and citations omitted]; accord Matter of Parry v New York State Comptroller, 187 AD3d 1303, 1304 [2020]). We recently reiterated that "'when determining whether a precipitating event was unexpected, . . . courts may continue to consider whether the injured person had direct knowledge of the hazard prior to the incident or whether the hazard could have been reasonably anticipated so long as such a factual finding is based upon substantial evidence in the record'" (Matter of Rizzo v DiNapoli, ___ AD3d ___, ___, 2022 NY Slip Op 00095, *2 [2022], quoting Matter of Stancarone v DiNapoli, 161 AD3d at 149-150). "The determination of whether an accident has occurred focuses on 'the precipitating cause of the injury, rather than on the petitioner's job assignment'" (Matter of O'Brien v DiNapoli, 196 AD3d at 961, quoting Matter of Kelly v DiNapoli, 30 NY3d at 682 [internal quotation marks and citation omitted]; see Matter of Stancarone v DiNapoli, 161 AD3d at 147). "[A]n injury which occurs without an unexpected event as the result of activity undertaken in the performance of ordinary employment duties, considered in view of the particular employment in question, is not an accidental injury" (Matter of Kelly v DiNapoli, 30 NY3d at 681 [internal quotation marks and citation omitted]; accord Matter of Lichtenstein v Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art. II, 57 NY2d 1010, 1012 [1982]; Matter of Parry v New York State Comptroller, 187 AD3d at 1304; Matter of Bell v DiNapoli, 168 AD3d 1206, 1207 [2019]).
The Hearing Officer found that petitioner was aware of the hazard presented by leaning back on the chair. Petitioner testified that when, during his shift, he sat down in a chair and leaned back, the chair continued backwards [*4]and flipped over, resulting in his injuries. Petitioner also testified that he had seen other individuals falling from chairs and that he knew he could fall after leaning back on a chair. In view of this testimony and applying the principles stated in Matter of Rizzo v DiNapoli (2022 NY Slip Op 00095 at *1-2), substantial evidence supports the Hearing Officer's finding (see Matter of Kenny v DiNapoli, 11 NY3d 873, 875 [2008]; Matter of Castellano v DiNapoli, 197 AD3d 1478, 1480 [2021]; Matter of Gilden v DiNapoli, 183 AD3d 1100, 1102-1103 [2020]; Matter of Martin v Murray, 95 AD3d 1556, 1557 [2012]).
Petitioner contends that the fractured metal frame of the chair was the precipitating cause, or the sudden and unexpected event, that caused him to fall. I agree with the majority that petitioner did not have the obligation to inspect the chair prior to sitting on it. This fact, however, does not relieve petitioner, as the party seeking benefits, of his burden of demonstrating that an unexpected or extraordinary event, such as a preexisting defect or crack in the chair, caused the chair to fall backwards or that the incident was caused by anything other than his own lack of attention and misstep (see Matter of Clarke v Murray, 85 AD3d 1536, 1537 [2011]). Indeed, in Matter of Clarke v Murray (85 AD3d at 1537), we held that substantial evidence supported the determination denying the petitioner's application for benefits where the "[p]etitioner did not offer any evidence that the chair was defective or that any unexpected or extraordinary event caused it to move." In Matter of Brennan v New York State & Local Empls. Retirement Sys. (50 AD3d 1374, 1376-1377 [2008]), we similarly held that substantial evidence supported the determination therein where the "[p]etitioner not only failed to submit any evidence that the chair was defective, but she offer[ed] no explanation as to what may have caused it to suddenly move out from under her forcing her to the floor."
In this vein, the Hearing Officer specifically found that petitioner did not satisfy his burden given his failure to tender evidence "that would prove that a defective chair caused him to fall backwards and the fall was not due to his own act of leaning backwards in the chair." Significantly, petitioner testified that, prior to his fall, the chair was in working order and that he did not hear a crack when he leaned back and fell to the ground. Indeed, he testified that he did not inspect the chair prior to sitting in it and that he did not know whether the chair was in fact broken prior to the incident at issue. Furthermore, the Hearing Officer found that it was only after petitioner's fall did petitioner notice that there was a crack in the metal frame of the chair. In this regard, petitioner stated that it "was later on when [he] was ready to leave" work that he noticed the crack in the chair. That said, the Hearing Officer found that there was no evidence demonstrating at what point [*5]in time the crack in the chair's frame occurred or that the chair was broken or defective prior to or at the time when petitioner sat in the chair. As the Hearing Officer stated, "there was no nexus between the crack and the cause of the fall." Because substantial evidence supports the Hearing Officer's conclusion that petitioner's own act of leaning back on the chair, and not any purported defect therein, caused him to fall (see Matter of Manning v DiNapoli, 150 AD3d 1382, 1383 [2017]; Matter of Clarke v Murray, 85 AD3d at 1537; Matter of Cirrone v DiNapoli, 80 AD3d 1069, 1070 [2011]; Matter of Brennan v New York State & Local Empls. Retirement Sys., 50 AD3d at 1376-1377; Matter of Fiore v McCall, 251 AD2d 940, 941 [1998]; Matter of Cheers v State of New York, 251 AD2d 735, 736 [1998]), I would not disturb respondent's determination.
Although two witnesses testified at the hearing on petitioner's behalf, the Hearing Officer found their testimony to be largely irrelevant and not supported by the facts. One witness testified that he did not observe petitioner's fall and that he only secured the subject chair from a dumpster some time "after the incident." The second witness, who did observe the fall, stated that the chair broke and "collapsed to pieces." As the Hearing Office found, however, the photographs of the chair did not support the second witness's characterization of it. The evaluation of these witnesses' testimony, together with any inconsistencies existing between it and the documentary evidence, presented credibility issues for the Hearing Officer and respondent to resolve (see Matter of Dilello v DiNapoli, 83 AD3d 1361, 1362-1363 [2011], lv denied 17 NY3d 717 [2011]; Matter of Brennan v New York State & Local Empls. Retirement Sys., 50 AD3d at 1376-1377). To that end, the Hearing Officer was entitled to disregard the testimony of these witnesses, and nothing on this record demonstrates that such credibility determination should not be accorded deference (see Matter of Witts v DiNapoli, 137 AD3d 1456, 1457 [2016]; Matter of McCabe v Hevesi, 38 AD3d 1035, 1036 [2007]).
Finally, the majority finds that "[t]he defect in the chair frame explains the failure of the chair, which had an adjustable back designed to be leaned upon." This is a factual finding made by the majority and not by the Hearing Officer. I do not endorse this finding given that this Court's review is limited to the grounds set forth in the Hearing Officer's determination, as adopted by respondent, and this Court "may not substitute [its] own findings" (Matter of Meyer v New York State Comptroller, 92 AD3d 1122, 1123 [2012]). Furthermore, this Court exceeds its judicial role by "weigh[ing] the evidence and substitut[ing its] judgment for that of the administrative factfinder" (Matter of Selke v New York State Comptroller, 176 AD3d 1295, 1297 [2019]). That said, this Court reviews respondent's determination to see whether it is supported by substantial evidence [*6]and, for reasons stated herein, it was.
ADJUDGED that the determination is annulled, without costs, petition granted, and matter remitted to respondent for further proceedings not inconsistent with this Court's decision.